

Richard Alan Ensminger
5401 Valhalla Drive
Carmichael, CA 95608
Phone: (916) 718-4467
E-mail: rickbk2013@gmail.com

Debtor-in-possession Richard Alan Ensminger

FILED
JUN 24 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

IN THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: RICHARD ALAN ENSMINGER,<br><br>Debtor in Possession<br><br>——————————————<br>RICHARD ALAN ENSMINGER,<br><br>Movant,<br>v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>Respondent. | ) Case No. 13-35297<br>) DC NO. RAE-5<br>)<br>) Chp. 11<br>)<br>)<br>) Date: August 6, 2014<br>) Time: 10:00 a.m.<br>) Place: U.S. Bankruptcy Court<br>) Robert T. Matsui United States Courthouse<br>) 501 I Street, Sacramento, CA 95814<br>) Courtroom 35, Department C<br>) Judge: Hon. Christopher M. Klein<br>)<br>)<br>) |

## MEMORANDUM OF POINTS & AUTHORITIES

1. "The [bankruptcy] statutes are designed to insure that complete, truthful and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *See, e.g., In re Matus*, 303 B.R. 660, 675 (Bankr. N.D. Ga. 2004). Chapter 11 debtor has no duty of fairness to creditor who has refused to file proof of claim, and lack of distribution to such a creditor will not preclude confirmation of debtor's plan as not having been proposed in "good faith." Bankr.Code, 11 U.S.C.A. § 1129(a)(3). See *In re Marshall*, 298 B.R. C.D. CA 670 (2003).

2. Wells Fargo Bank, N.A., as Trustee for the Holders of the Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC1 (the "REMIC", "2006-WMC1" or "Wells") is an *unscheduled* creditor who failed to file a timely proof of claim and is not a "party in interest" in Debtors bankruptcy. Pursuant to *In re Marshall* supra: *Scheduled* creditor who had failed to file proof of claim remained "party in interest" with standing to object to debtors' proposed Chapter 11 plan and to move to dismiss case based on debtors' alleged lack of good faith. Bankr.Code, 11 U.S.C.A. §§ 1109(b), 1112(b). See *In re Marshall, supra*. In Debtors case, Wells was not a scheduled creditor and is not even a party in interest.

3. Principal purpose of debtor's bankruptcy schedules in Chapter 11 case is to inform creditors of nature of debtor's assets and liabilities so that they will have enough information to decide whether they want to engage in further inquiry, and minor errors which do not create deceptive impression or result in other prejudice should not be basis for limiting debtor's rights. See *In re Marshall, supra.*

4. 2006-WMC1 is not a creditor in the above captioned bankruptcy and failed to timely file a claim prior to the bar date of April 7, 2014. 2006-WMC1 seeks by trickery or deceit to achieve standing by attaching themselves to the claim of another in a brazen attempt to educe Subject Matter Jurisdiction on their behalf. There simply is no writing attached to Claim 5 establishing a relationship between the two parties (as partners, principal/agent, attorney in fact, or any other type of relationship, joinder or mis-joinder). See Rule §§ 7018, 7019, 7020 and 7021. The Court should sever the REMICs unfounded claims as a secured creditor who timely filed Claim 5. Additionally and alternatively the Court should require Wells to file an interpleader as Debtor is subject to double or multiple liability by allowing one party to file a Proof of Claim and another party that does not file a Proof of Claim but advocates their position as a secured creditor. See Federal Rules of Civil Procedure Rule § 22. The claims of Nationstar and the REMIC are adverse, lack a common origin and/or are adverse and independent AND the Debtor denies liability in whole and in part to Nationstar and to the REMIC.

## CONSEQUENCES OF NON-COMPLIANCE WITH RULE 3001(c)

5. Failure to comply with Rule 3001(c) results in the following:

A. First, the [creditor] does not enjoy the Rule 3001(f) evidentiary effect of a claim that is filed in accordance with the Rules.
B. The second consequence is that a proof of claim that does not comply with the [requirements] of Rule [3001(c)] is subject to sanctions under Rule 3001(c)(2)(D).
C. "the Debtor had the right to expect that she would have been properly informed of the actual amount of attorney fees and the nature and amount of other expenses that were improperly lumped in with the attorney fees on the Bank's Claim."
D. Nonetheless, she had a right to have correct information provided in the Bank's Claim and Rule 3001(c)(2)(D) provides that the Court may invoke an appropriate sanction on account of the Bank's failure to comply.
E. The Rule permits the Court to exclude information omitted from the Bank's Claim as evidence at trial. FED. R. BANKR. P. 3001(c)(2)(D)(i). Accordingly, the Court will deny admission of the omitted information.

See *IN RE JIMENEZ*, 487 B.R. 543 (Bankr. D. Colo. 2013).

## CLAIM BASED ON A WRITING

6. "Moreover, because a deed of trust is a contract, the courts will construe it, together with the note and any agreement of sale, [PSA/A&A[13]] using rules of contract interpretation"[14]. The Pooling and Servicing Agreement should have been attached to Claim 5. Written authorization to file Claim 5 pursuant to the PSA section 10.08 ¶ 3[15] should have been attached to Claim 5. Wells Fargo Bank as Trustee of a different trust was previously warned on this issue on April 25, 2008, see *In Re Nosek*:

> "That may be true but proofs of claim filed under a written power of attorney MUST have the power of attorney attached. Fed. R. Bankr. P. 3001 and Official Form 10. No part of the [Pooling and Servicing] agreement was attached to the proof of claim. It is worth repeating as a warning to lenders and servicers that the rules of this Court apply to them. Their private agreements and the frenzied trading market for mortgages do not excuse compliance with the Bankruptcy Rules any more than they would justify ignoring the Bankruptcy Code."

7. To the extent the note and Deed of Trust attached to Claim 5 were ever part of a REMIC trust governed by the laws of the state of New York, the following reference to the Pooling and Servicing Agreement and New York Law is relevant. Debtor requests this court take

---

[13] "PSA" means Pooling and Servicing Agreement, and "A&A" means the Assignment and Assumption Agreement (also known as the Mortgage Loan Purchase Agreement).
[14] MILLER & STARR, supra note 249, § 10:5
[15] See Ensminger declaration ¶ 33

judicial notice of the use of foreign law under Federal Rules of Evidence, Rule 201 (c)(2): "The court must take judicial notice if a party requests it and the court is supplied with the necessary information." Debtor evidences that the foreign situs of the REMIC Trust is set in the state of New York (see Ensminger Declaration ¶ 52 filed with Debtors Motion to Disallow Proof of Claim 5, where PSA is defined in ¶ 44), as such, the laws under New York's "EPTL" section, particularly at section 7-2.4, must be applied as it relates to the trusts' standing, both prudentially and constitutionally. Debtor raises these issues as a threshold matter and asks this court to take such judicial notice in making a determination as to the REMIC's (Merrill Lynch Mortgage Investors Trust, Series 2006-WMC1) standing under its foreign laws that govern its existence and standing.

8.  The Note attached to Claim 5 is not a negotiable instrument, thus the requirements of UCC Article IX apply. The missing Pooling and Servicing Agreement is governed by the laws of the State of New York, thus UCC Article IX provisions of the State of New York would control any secured transaction pursuant to the PSA. CA. Commercial Code Article IX would apply to any other secured transaction. To the extent the transaction is a single transaction pursuant to the Single Transaction and Step Transaction Doctrine, where the borrower is the Debtor and creditors are investors who paid money for the loan, there is no documentation between the parties[16]. The terms of the Pooling and Servicing Agreement, Assignment and Assumption Agreement and other governing documents (hereinafter "Governing Documents") and the terms of the note and deed of trust do not apply. To the extent the Court determines they do apply, the Borrower accepted terms under the note and deed of trust which were different from the terms the investors accepted in the governing documents for 2006-WMC1. Debtor is an intended party to the transaction (PSA). Numerous provisions of the PSA confer benefits to

---

[16] The step transaction doctrine originated from a common law principle in *Gregory v. Helvering*, 293 U.S. 465 (1935) that allowed the court to re-characterize a tax-motivated transaction.; "As early as 1938, the United States Supreme Court has indicated that "a given result at the end of a straight path is not made a different result because reached by following a devious path." *Commissioner v. Clark*, 489 U.S. 726, 738 (1989).; (*Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1648-1649. *Shuwa*, supra, at p. 1648.; *McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 556.)

-4-

Debtor whereby Debtor is, at a minimum, an incidental beneficiary or intended 3rd party beneficiary.

9.  Although the "beneficiary" is not defined by statute, court decisions fill the gap and hold that the beneficiary is the party to the deed of trust that is owed the debt and whose economic interests are at risk when the existence or priority of the deed of trust is challenged. See *Monterey S.P. P'ship v. W.L. Bangham, Inc.*, 777 P.2d 623, 627 (Cal. 1989) (en banc).

## STANDING

10.  "For a federal court to have jurisdiction, the litigant must have constitutional standing, which requires an injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D. Wash. 2009) (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996)).

11.  Constitutional standing, which is based on the "case or controversy" requirement under Article III, § 2 of the U.S. Constitution, cannot be waived as it is "a threshold jurisdictional requirement." See id. at 367(citing *Pershing Park Villas Homeowners Ass'n V. United Pac. Ins. Co.*, 219 F.3d 895, 899-00 (9th Cir. 2000)). The United States Supreme Court recently held that in order to meet this jurisdictional requirement, an assignee of a claim must hold legal title to the claim being asserted. *Sprint Commc'ns Co. v. APCC Services, Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 171 L.Ed.2d 424 (2008). Nationstar is named as the creditor of Claim 5 and an alleged representative of Nationstar signed Claim 5. No writing attached to Claim 5 supports Nationstars bald assertion that it is a creditor, and documents filed by 2006-WMC1 state that it is the creditor and that it timely filed Claim 5, thus contradicting Nationstars claim. 2006-WMC1 is not named as the creditor or claimant to Claim 5. The issue of determining which, if any of the two creditor's names applies to Claim 5 is ripe because the facts of the case have matured into an existing substantial controversy warranting judicial intervention. Without this intervention the Court will not be able to determine Nationstar or Wells standing before this Court.

12. The concept of standing involves more than constitutional standing. It involves two inquiries. See *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 335, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) ("We have treated standing as consisting of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations."); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In the first, as set forth above, the court must ask whether the plaintiff or moving party has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III. A suit brought by a plaintiff or relief sought by a moving party without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-04 (1998). In that event, the suit should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir.2003); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir.2002).

13. Beyond this "irreducible constitutional minimum of standing," the court must engage in a second inquiry to determine whether the plaintiff or moving party is properly able to assert a particular claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 335, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir. 2004). Frequently, this inquiry requires an analysis of whether a statute under which the plaintiff or moving party asserts a claim has conferred "standing" on the plaintiff or moving party. In such cases, non-constitutional or "prudential" standing exists when "a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." See *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir.2004); see also *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (discussing other "prudential principles" such as refraining from adjudicating "generalized grievances," and requiring the complaint to fall within "the zone of interests to be protected or regulated"). In other instances, a statute or rule of law may restrict the assertion of a

claim to a certain universe of parties. This restriction includes the requirement of Federal Rule of Civil Procedure 17(a)(1) that "an action must be prosecuted in the name of the real party in interest." See *In re Wilhelm*, 407 B.R. 392, 398 (Bankr. D. Idaho 2009) (stating that the requirement of Rule 17 "generally falls within the prudential standing doctrine.") The restriction may also be based on state law, See *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (non-custodial parent who is barred under state law from suing as his or her child's "next friend" lacks prudential standing to bring a First Amendment challenge to a school board's policy requiring teacher-led recitation of the Pledge of Allegiance); 15 James Wm. Moore, et al., Moore's Federal Practice - Civil 101.51[1][e] (3d ed. 2011) ("State laws may operate to deprive a prospective plaintiff of prudential standing in federal court."). Generally, a party without legal rights to enforce an obligation under applicable substantive law lacks prudential standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008). If a party has suffered sufficient injury to satisfy the jurisdictional standing requirement of Article III, but the party cannot satisfy the applicable prudential standing requirement(s), the party cannot state a claim upon which relief can be granted. *Guerrero v. Gates*, 357 F.3d 911, 920-21 (9th Cir.2003), In that event, the claim for relief should be dismissed under Federal Rule of Civil Procedure 12(b) (6). Id. at 920-21.

## REMICS AND FEDERAL TAX LAW

14.  Federal tax law does not rely upon the state-law definition of ownership, but it looks to state law to determine parties' rights, obligations, and interests in property. See, e.g., *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). 2006-WMC1 is a REMIC Trust. The tax definition of ***ownership,*** and thus standing, applies to mortgage notes claimed as assets of the subject REMIC trust. See Bradley T. Borden & David J. Reiss, *Beneficial Ownership and the REMIC Classification Rules*, 28 TAX MGMT. REAL EST. J. 274 (Nov. 7, 2012). Tax law can also disregard the transfer (or lack of transfer) of formal title where the transferor retains many of the benefits and burdens of ownership. See *Bailey v. Comm'r*, 912 F2d 44, 47 (2d Cir. 1990). Courts focus on whether the benefits and burdens of ownership pass from one party to another when

considering who is the ***owner*** of property for tax purposes. *Grodt & McKay Realty, Inc. v. Comm'r*, 77 T.C. 1221, 1237 (1981). The analysis of ownership does not merely look to the agreements the parties entered into because the label parties give to a transaction does not determine its character. See *Helvering v. Lazarus & Co.* 308 U.S. 252, 255 (1939). The analysis must examine the underlying economics and the attendant facts and circumstances to determine who owns the mortgage notes for tax purposes. *See id.* The court in *In re Kemp* documents in painful detail how Countrywide failed to transfer possession of a note to the pool backing a Mortgage Backed Security (MBS) so that Countrywide failed to comply with the requirements necessary for the mortgage to comply with the REMIC rules. See *In re Kemp*, 440 F.R. 624 (Bkrtcy D.N.J. 2010). Respondent and 2006-WMC1 in this case appear to have done exactly what was adjudicated in *Kemp*, failure to sufficiently show a timely transfer that complied with the strict language of the trusts' Agreements. Not only that, but Claim 5 fails to include any of the trusts agreements, these are writings that are required to prove *their* claim.

15. *Kemp* addressed the issue of enforceability of a note under the UCC for bankruptcy purposes. See *In re Kemp*, 440 B.R. 624 (Bkrtcy D.N.J. 2010). The court in that case held that a note was unenforceable against the maker of the note and the maker's property under New Jersey law on two grounds. The court held that because the beneficial owner of the note, the Bank of New York (the trustee of a pool of mortgages that backed an MBS that included the mortgage at issue in the case), did not have verifiable, timely possession and because the note **lacked proper endorsement upon sale** (this is the same standard in California), the note was unenforceable. Recognizing that the mortgage note came within the UCC definition of negotiable instrument, the court then considered who is entitled to enforce a negotiable instrument but held that no such person was a party in *Kemp*. As the *Kemp* court notes, "[f]rom the maker's standpoint, it becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide **makers** (Debtor in this

case) with a recognizable interest in demanding proof of the chain of title" (specifically referring to the trust participants). 440 B.R. at 631 (quoting *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 168 (3d Cir. N.J. 1988). And because the originator did not comply with the legal niceties, the beneficial owner of the debt, the trustee, cannot file its proof of claim either.

16. A "debt" is a liability on a claim. 11 U.S.C. § 101(12). The Debtor, Ensminger, does not admit that he owes a debt based on the counterfeit and forged Note exhibited with Claim 5. Merely producing an un-authenticated counterfeit and forged note with a *claim* of its original character does not grant Respondent with automatic rights of a holder. *See id.*

17. A "creditor" is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), and a "claim" is a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A). The Supreme Court has explained that the definition of "claim" is to be construed broadly, and that a "right to payment" means *"nothing more, nor less, than an enforceable obligation." Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990). "Absent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law." *Cross*, 218 B.R. at 78 (analyzing whether plaintiff had standing to bring § 523(a)(2)(A) action against chapter 7 debtor). State law applies in this instance because the underlying transaction is purely commercial in nature and there is no apparent federal interest, overriding or otherwise. Therefore, it is, and has been, Respondent's burden to prove, inter alia: 1) an enforceable obligation and that its ownership rights were derived from a timely transfer; 2) a timely, statutorily competent, endorsement [IRC 860 et. Seq.]; and 3) timely acceptance of the asset into the REMIC trust, or even that it acquired an obligation of Debtor.

## CA. COMM. CODE / UCC ARTICLE IX

18. Under the Claim 5 exhibited promissory note at section 5, "Borrower's Right to PrePay", the contract states that the borrower has "…the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.' *When I make a prepayment, I will tell the Note Holder in writing that I am doing so.*" The Italicized

sentence of this Section constitutes an undertaking to do an act in addition to the payment of money. Additionally in section 11 titled "Uniform Secured Note", a Security Instrument adds additional protections to the Note Holder. The Security Instrument attached to Claim 5 includes additional undertakings that are required and are in addition to the payment of money (i.e. borrower required to maintain insurance, borrower shall occupy the property, borrower shall not allow the property to deteriorate, borrower is constrained in the use and handling of hazardous substances on the property, etc.). Under 3-104(a)(3) of the UCC[17], a promissory note **cannot be an instrument** if it contains such an undertaking; the rules of negotiability apply only to promises to pay money, not to other, non-monetary understandings. Sending a notice is an act "in addition to the payment of money," and the note's language clearly constitutes an "undertaking" to perform that act. Further the note attached to Claim 5 has an attached security instrument (also in Claim 5) and both documents reference each other. They were not intended to exist independently of each other. Thus, the instrument is not negotiable and the rules of Article 3 of the UCC (including the holder-in-due-course protections) do not apply. See: UCC § 9-109(a)(3)[18] states that Article 9 applies to any sale of a "promissory note," which is defined in § 9-102(a)(65)[19] as "an instrument that evidences a promise to pay a monetary obligation, [or] does not evidence an order to pay . .".

    19.    The alleged trust associated with Claim 5 has concealed one or more REMIC elections[20].

## HEARSAY

    20.    Claim 5 is simply hearsay with no evidentiary value whatsoever. Claim 5 is not self-authenticating or valid pursuant to F.R.B.P. Rules §§ 902 or 902(10).

///

---

[17] Additionally and alternatively see CA Comm. Code 3104
[18] Additionally and alternatively see CA Comm. Code 9109
[19] Additionally and alternatively see CA Comm. Code 9102
[20] The Proof of Claim coversheet makes no reference to a trustee or indenture trustee, but the documents attached to the claim reveal "Wells Fargo Bank, N.A., as Trustee for the Holders of the Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC1" (the "REMIC") is somehow involved in the claim. The REMIC has stated that they timely filed Claim 5.

| | |
|---|---|
| 1 | Dated: June 24, 2014 |
| 2 | RESPECTFULLY SUBMITTED, |
| 3 | |
| 4 | *[signature]* |
| | Richard Ensminger, Debtor-in-possession |