

Richard Alan Ensminger
5401 Valhalla Drive
Carmichael, CA 95608
Phone: (916) 718-4467
E-mail: rickbk2013@gmail.com

Debtor-in-possession Richard Alan Ensminger



# UNITED STATES BANKRUPTCY COURT

## IN THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re: RICHARD ALAN ENSMINGER,<br><br>Debtor in Possession<br><br>―――――――――――――――――<br><br>RICHARD ALAN ENSMINGER,<br><br>Movant,<br>v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>Respondent. | ) Case No. 13-35297<br>) DC NO. RAE-4<br>)<br>) Chp. 11<br>)<br>)<br>) Date: August 6, 2014<br>) Time: 10:00 a.m.<br>) Place: U.S. Bankruptcy Court<br>) Robert T. Matsui United States Courthouse<br>) 501 I Street, Sacramento, CA 95814<br>) Courtroom 35, Department C<br>) Judge: Hon. Christopher M. Klein<br>)<br>)<br>) |

## MEMORANDUM OF POINTS & AUTHORITIES

The allowance or disallowance of a claim or interest is a civil proceeding arising under the Bankruptcy Code. As a result, the bankruptcy court has original, but not exclusive, jurisdiction to determine it. 28 U.S.C. § 1334(b). Claims allowance proceedings in bankruptcy are generally considered "core" proceedings. 28 U.S.C. § 157(b)(2)(B). This means the bankruptcy court may hear and make a final determination allowing or disallowing the claim or interest. 28 U.S.C. § 157(b)(1). Any party in interest may object to a claim. 11 U.S.C. § 502(a).

1   A Chapter 11 debtor-in-possession is a party in interest with standing to file a claim objection. *In re G.L Indus., Inc.* (9th Cir. 2000) 204 F3d 1276, 1280-1281.

A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest. 11 U.S.C. § 501(a). A claim lacking proper documentation is not entitled to prima facie validity, thus requiring the claimant to establish the claim by a preponderance of the evidence or be subject to disallowance. *In re Heath* (9th Cir. BAP 2005) 331 BR 424, 433-435. Where the objecting party presents sufficient evidence to rebut the presumption of validity created by the filing of a proof of claim, the presumption disappears, and the creditor has the burden of proving its claim. *In re Southern Calif. Plastics, Inc.* (9th Cir. 1999) 165 F.3d 1243, 1248; *In re Palmdale Hills Property, LLC* (9th Cir. BAP 2009) 423 BR 655, 665.

A "creditor" is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A "claim" is a right to payment or an equitable remedy, whether or not such right is contingent. See 11 USC § 101(5). While a per se failure to attach supporting documentation is not in itself reason to disallow a claim, the failure to attach documents which goes to the heart of the defect in the claim, as well as the presence/inclusion of attached documents that themselves amount to evidence of the claim's defect, will provide reason to disallow a claim. See *In re Heath v. American Express Travel Related Servs. Co, (In re Heath)*, Case No. CC-04-1324 (9th Cir. October 12, 2005). Succintly, a claimant must show it has a "pecuniary interest" in the underlying debt that gives rise to the claim in order that the claimant is a "creditor." See *In re Sobczak*, 369 B.R. 512, 517-18 (9th Cir. BAP 2007).

Under the Bankruptcy Code, a claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an objection to a claim is made, the claim is disallowed "to the extent that . . .such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

To the extent the note and Deed of Trust attached to Claim 5 were ever part of a REMIC trust governed by the laws of the state of New York, the following reference to the Pooling and Servicing Agreement and New York Law is relevant. Debtor requests this court take judicial notice of the use of foreign law under Federal Rules of Evidence, Rule 201 (c)(2): "The court must take judicial notice if a party requests it and the court is supplied with the necessary information." Debtor evidences that the foreign situs of the REMIC Trust is set in the state of New York (see Ensminger Declaration ¶ 52, where PSA is defined in ¶ 44), as such, the laws under New York's "EPTL" section, particularly at section 7-2.4, must be applied as it relates to the trusts' standing, both prudentially and constitutionally. Debtor raises these issues as a threshold matter and asks this court to take such judicial notice in making a determination as to the REMIC's (Merrill Lynch Mortgage Investors Trust, Series 2006-WMC1) standing under its foreign laws that govern its existence and standing.

Debtor alleges that to the extent the note and deed of trust attached to Claim 5 represent valid, legally binding and enforceable obligations of the Debtor, the "Step Transaction Doctrine" applies in this case[2], which, as a result of the several transactions being treated as one under the Doctrine, Debtor is an intended party to the transaction (PSA). Numerous provisions of the PSA confer benefits to Debtor whereby Debtor is, at a minimum, an incidental beneficiary or intended 3rd party beneficiary. Benefits from the PSA to Debtor are (not all inclusive): (i) the investor funds authorized by the trust are the source of funds for the Debtors mortgage loan[3]; (ii) credit enhancements (3rd party payments) as described in the Prospectus and Prospectus Supplement; (iii) authorization to enter into loan modifications (PSA section 3.01); and (iv) advances of principal and interest (PSA section 4.01, see also definition of Advance, etc.).

---

[2] The step transaction doctrine originated from a common law principle in *Gregory v. Helvering*, 293 U.S. 465 (1935) that allowed the court to re-characterize a tax-motivated transaction.; "As early as 1938, the United States Supreme Court has indicated that "a given result at the end of a straight path is not made a different result because reached by following a devious path." *Commissioner v. Clark*, 489 U.S. 726, 738 (1989).; (*Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1648-1649. *Shuwa*, supra, at p. 1648.; *McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 556.)

[3] See the single transaction and step transaction doctrine

-3-

1    Debtor alleges that the transactions, together, meet with a minimum of at least one of the three (3) tests under the Doctrine, i.e.; (1) the binding commitment test, (2) the interdependence test, or, (3) the end results test.

The REMIC is specifically prohibited from filing Claim 5 unless the provisions of Section 10.08 paragraph 3 are followed[4]. The burden of proof is on the Trustee of the Subject Trust to produce the required information, such as (emphasis added) "…unless such Holder or the Class A-1B Certificate Insurer previously *shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof,* as hereinbefore provided, the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates or the Class A-1B Certificate Insurer, as applicable, *shall also have made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee* hereunder …"

The creditors claim here must be disallowed, because it is unenforceable under both California and New York law on two grounds. First, under California and New York's Uniform Commercial Code ("UCC") provisions, the fact that the owner of the note, the alleged Trustee of the Subject Trust, never had possession of the note, is fatal to its enforcement as is the fact that Nationstar never had possession of the note. Second, upon the sale of the note and mortgage to the Trustee of the Subject Trust, the fact that the note was not properly indorsed to the new owner also defeats the enforceability of the note. Additionally and alternatively, upon the sale of the note and deed of trust to Nationstar, the fact that the note was not properly indorsed to the new owner also defeats the enforceability of the note. Once again, because Claim 5 does not state a claim upon which relief can be granted, Debtor is forced to make assumptions as to the basis for Nationstars claims and then defend against these claims. This leaves Nationstar with an unfair advantage over Debtor as well as denying Debtor due process. Nonetheless, Debtor, at a significant disadvantage, continues.

---

[4] This is a contractual limitation to standing requiring, in this case, written permission from the investors, who are the beneficiaries of the alleged REMIC trust.

-4-

The Third Circuit explains the significance of indorsement and affixation requirements to achieve holder status, and thereby qualify to enforce a note against the maker in *Adams v. Madison Realty & Dev. Inc.*, 853 F.2d 163, 166 (3d Cir. 1988).

The court explained that the maker of the note must have certainty regarding the party who is entitled to enforce the note.

> From the maker's standpoint, therefore, it becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide makers with a recognizable interest in demanding proof of the chain of title. Consequently, plaintiffs here, as makers of the notes, may properly press defendant to establish its holder status.

853 F.2d at 168.

In this case the disadvantage to Debtor is brazenly apparent because there already exists another party claiming to be the secured creditor of Claim 5 and claiming to own the debt associated with Claim 5: WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE HOLDERS OFTHE MERRILL LYNCH MORTGAGE INVESTORS TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-WMC1 (the "REMIC"). See, inter alia, the REMICs Motion in Limine (Docket #83) and Trial Brief (Docket #88).

A claimant that does not have a pecuniary interest, that is not a creditor as defined under 11 U.S.C. § 101(10), lacks constitutional standing to file a proof of claim. In order to determine a party's standing in the bankruptcy context, as its first inquiry the Court must determine whether the party has constitutional standing, i.e. whether the party satisfies the "case and controversy" requirement of Article III. *In re Jackson* 241 B.R. 21 (Bankr. E.D. Cal. 2011). When a claimant fails to demonstrate it has any ownership interest or legal title to the claim being asserted, the claimant fails to establish it has constitutional standing to bring the claim. See *Sprint Communication Co. v. APCC Services, Inc.* 554 U.S. 269 (2008). The actual person with standing to bring a proof of claim is that person entitled to enforce the claim, which person must be the actual creditor. If the person or entity alleged as "creditor" in a proof of claim is not the

actual PETE as to the claim, then this alleged "creditor" lacks constitutional standing to bring the claim.

Here, Nationstar Mortgage, LLC ("Nationstar") has submitted no documentation or other evidence that it is the creditor of the underlying debt that gives rise to this claim, or that it holds any security-interest in the real property securing the underlying debt that gives rise to this claim. Further, and demonstrating the problem directly, while Nationstar did in fact attach supporting documentation of a creditor, all of this documentation evidences that other entities, per Nationstar's own attached supporting documentation, are the creditor to this purported claim and could possibly hold the security-interest in the real property that secures the claim.

To the extent that Nationstar changes its tenuous position and claims to be a servicer, no servicing agreement, power of attorney, agency agreement or other writing was attached to Claim 5 authorizing Nationstar to act on behalf of any other entity. This would be an admission that Nationstars claim as filed was fraudulent. Debtor denies that Nationstar is a creditor or a servicer of any debt owed by Debtor.

A claim is properly filed by a creditor, or its attorneys or bona fide agent on behalf of the creditor, with payment stated to be made and directed to the creditor, not by some third party that does not submit evidence it is entitled to payment on the underlying debt and does not even submit evidence for agency (e.g. a copy of a servicing, attorney-in-fact or some other agency agreement, not simply a computer-printed tax/insurance escrow statement that for unknown reasons includes a print-out of the name "Nationstar Mortgage"), and furthermore directs payment to itself.

Debtors evidentiary objections are based on, among other things, Federal Rules of Evidence §§ 403, 601, 602, 801 and 901. Debtor incorporates by reference the evidentiary objections into Debtors Motion to Disallow Claim 5.

The loan documents, to the extent they are valid, enforceable and legally binding obligations of the Debtor were table funded and the named lender did not fund the loan but acted as a broker for an undisclosed 3rd party. Pursuant to TILA and Reg. Z table funded loans are

predatory per se. There were many hidden fees and kickbacks paid between the various transaction parties that were known prior to the signing of the documents. These hidden fees and kickbacks were concealed, misrepresented and/or not disclosed to the Debtor. These hidden and unauthorized fees and kickbacks increased the cost of Debtors loan and Debtor was deprived of seeking a more affordable loan because this information was hidden and concealed from Debtor. All of the information regarding these hidden fees and kickbacks is in the sole custody and control of the transaction parties, their predecessors in interest and successors in interest. One example of these hidden fees and kickbacks is that WMC Mortgage Corp. was paid an undisclosed fee of between 1% to 4% for the use of their name as the lender and payee of the note. Further, it was never disclosed that Debtors payments included servicing fees taken from the interest portion of each monthly payment[5]. Debtor assigned all of these miscellaneous proceeds to the lender in the Deed of Trust (See section 11 ¶¶ 1 and 3 in the Deed of Trust attached to Claim 5) with the following provision (emphasis added):

> 11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.
>
> …
>
> In the event of a total taking, destruction, *or loss in value of the Property*, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Debtor's property has lost considerable value and yet Claim 5 shows no credit to the "sums secured by this Security Instrument".

Debtor has setoffs, claims in recoupment and is entitled to restitution and disgorgement subject to proof.

Finally Debtor seeks Declaratory Relief as to the terms of the PSA section 10.08 ¶ 3 that will trigger written consent. See Ensminger Decl. ¶ 4

The REMICs governing documents call for a table funded loan. A table funded loan is improper simply under California property law, contract law, and deceptive lending laws. It is

---

[5] See the PSA definitions for Servicing Fee and Servicing Fee Rate

also PER SE a void contract because it commits the parties to perform acts contrary to law. Then the originator, closing agent and third party aggregator (the other side of the assignment and assumption agreement) go ahead and act in accordance with the illegal assignment and assumption agreement. All actions at closing should be considered not only voidable, but void, subject to equitable doctrines.

Putting the name of the originator on the note attached to Claim 5 instead of the source of funding and subject to repayment terms that are different than what the true lenders or true creditors required, is a void act against public policy and illegal per se. It is also predatory per se which is more than just "wrong" as it entitles Debtor to justice and requires the perpetrators be punished by treble damages, disgorgement of undisclosed fees, setoff, restitution, etc.

The note and deed of trust attached to Claim 5 are therefore void not voidable. And the absence of offer and acceptance on the same terms also means the loan documents attached to Claim 5 are unenforceable. And further and most importantly, the absence of consideration at the alleged loan closing means that no contract was formed, the creation and signing of the note were a sham, and the creation, signing and recording of the deed of trust were also a sham.

Debtors Motion for Sanctions pursuant to F.R.B.P. Rule § 3001 and 11 U.S.C.A. § 105 ("Motion in Limine") are incorporated by reference into Debtors Motion to Disallow Claim 5.

As a threshold matter, the standing of Respondent Nationstar to advocate and file Claim 5 as evidence is ripe for consideration. Before the Court can consider Nationstars standing before this Court, Nationstar must have been frank and fair with the court, nothing about Claim 5 should be guarded, but everything that tends to a full and fair determination of the matters in controversy should have been placed before the court. The United States Supreme Court discussed Clean Hands as a condition precedent to standing in *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933):

> The meaning and proper application of the maxim are to be considered. As authoritatively expounded, the words and the reasons upon which it rests extend to the party seeking relief in equity. 'It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands. He must be frank

and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court.' Story's Equity Jurisprudence (14th Ed.) 98. The governing principle is 'that [290 U.S. 240, 245] whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' Pomeroy, Equity Jurisprudence (4th Ed.) 397. This court has declared: 'It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity.' *Bein v. Heath*, 6 How. 228, 247. And again: 'A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity.' *Deweese v. Reinhard*, 165 U.S. 386, 390, 17 S.Ct. 340, 341.

For all of the reasons set forth herein and set forth in the objection and supporting declarations, this objection should be sustained and Claim No. 5 should be disallowed.

Debtor reserves the right to amend this objection and/or to bring a new objection to Claim 5 based on the outcome of Debtors: (i) Motion in Limine (Motion for Sanctions Pursuant to Rule § 3001 and 11 USCA § 105); and/or (ii) Evidentiary Objections to Claim 5 and the Declaration of Larry E. Johnson.

Claim 5 should be disallowed and the Court should sua sponte bring an order to show cause why sanctions should not be issued against Nationstar, Larry E. Johnson and Weinstein, Pinson, &Riley, PS pursuant to Rule 9011(c)(1)(B).

Dated: June 24, 2014

RESPECTFULLY SUBMITTED,

*[signature]*

Richard Ensminger, Debtor-in-possession